OPINION OF THE COURT
Per Curiam.
This is an action for declaratory judgment and injunctive relief seeking a judicial determination of questions concerning the control and management of defendant S & H Foundation, Inc. Plaintiffs represent the interests of Baldwin-United Corporation which now indirectly owns all the stock of the former Sperry & Hutchinson Company, Inc. The individual defendants are former officers and stockholders of Sperry & Hutch *482 inson Company, Inc. and are members and directors of the foundation. Plaintiffs seek to remove them and install representatives of Baldwin-United Corporation in their place.
The S & H Foundation was formed in 1962 as a type-B not-for-profit corporation and has, since its creation, received its sole financial support from the Sperry & Hutchinson Company, a company well known for its S & H green stamps. The foundation is and always has been a separate legal entity with its own bylaws and certificate of incorporation. Throughout the years, however, a substantial portion of the foundation’s grants benefited company employees directly or indirectly and many of its charitable programs were continuations of programs established and conducted by the company prior to 1962. Neither the certificate of incorporation nor the bylaws of the S & H Foundation contain any qualifications for membership or holding office. From its inception in 1962, however, a practice developed that only officers, directors or agents of the company served as members and directors of the foundation.
In 1981 Baldwin-United Corporation purchased all of the outstanding stock of the company, including all of the stock of the Beinecke defendants. Although the Beineckes’ connection with the company terminated with this stock sale, they have refused to resign as members of the foundation or to second the nomination for membership of three individuals associated with Baldwin-United. Accordingly, plaintiffs instituted this action seeking to compel them to do so, claiming that this is a "company” foundation and that individual defendants therefore have a fiduciary duty not to act contrary to the established practices and purposes of Sperry & Hutchinson Company, Inc. but that they are in fact doing so by blocking the personnel changes proposed by Baldwin-United.
As plaintiffs point out, the creation of company foundations is a recognized business practice. Such foundations provide a company with an opportunity to integrate and institutionalize its long-range charitable giving to further corporate goals and objects, and permit the company to create goodwill while doing so. Moreover, there are definite tax advantages to a company in using a foundation because it may use its gifts to smooth out its earnings picture by making large gifts in profitable years and smaller gifts in lean years (see generally, Hirschfield, Corporate-Community Foundations: The Tie That’s Binding, 25 Foundation News, No. 6 [Nov./Dec. 1984]; Weithorn, Tax Techniques for Foundations and Other Exempt *483 Organizations § 12.02 [1]). Except for special tax treatment, however, the law does not accord any special status to company foundations, as plaintiffs concede.
The S & H Foundation exhibits many of the indicia common to "company” foundations: it bears the name of the company that created it; its charitable programs, involving as they frequently do the company’s employees and clientele, publicize the company’s generosity and contribute to the company’s goodwill; its organization and administration are intimately intertwined with that of the company; and the company is the sole source of its funds.
However, the foundation’s certificate of incorporation and bylaws and the annual gift instruments from the company contain no specific limitations requiring the foundation to expend its resources as the company directs or limiting membership in the foundation to persons affiliated with the company. Nor did the sale documents contain any provisions to ensure Baldwin-U nited’s future control over the foundation.
Plaintiffs assert, however, that due to the past practices and relations between the corporations and the substantial assets that the company has contributed to the foundation, which now total over six million dollars, equity must intervene to remove the individual defendants and thus prevent them from diverting these funds to their own purposes. We agree with plaintiffs that the sale of a business imposes a duty upon the seller not to impair the goodwill of that business (Mohawk Maintenance Co. v Kessler, 52 NY2d 276, 286), and that defendants may not act in a manner that is inimical to the charitable purposes of the foundation (cf. Not-For-Profit Corporation Law § 513 [b]). The customs and practices of the past are not enough, however, to impose a fiduciary duty on them to resign or to install plaintiffs’ representatives in their places (see, Matter of Rye Psychiatric Hosp. Center, 66 NY2d 333). Absent evidence that defendants have misused the foundation’s assets or a showing that their acts are " 'unfair, oppressive or manifestly detrimental to the [foundation’s] interests’ ” (Matter of Sousa v New York State Council Knights of Columbus Found., 10 NY2d 68, 75), we find no basis for the invocation of equitable power to annul defendants’ acts and interfere in the legal relationship that the parties have structured for themselves.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
*484 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur in Per Curiam opinion.
Order affirmed, with costs.